Case 5:19-cv-00006   Document 49   Filed on 11/02/21 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
November 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| MARIA DE LA CRUZ VARGAS, § § Plaintiff, § § VS. § § ANTONY BLINKEN, U.S. § SECRETARY OF STATE, § § Defendant. § | CIVIL ACTION NO. 5:19-CV-6 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria De La Cruz Vargas seeks a judicial declaration that she is a U.S. citizen by birth (Dkt. No. 1). On June 11, 15, and 22, 2021, the parties appeared before the Court for a three-day bench trial, at which time the Court received evidence and heard argument of counsel (Dkt. Nos. 44, 45, 46). Pursuant to Federal Rule of Civil Procedure 52, the Court now enters its Findings of Fact and Conclusions of Law.

### I.  LEGAL STANDARD

Under 8 U.S.C. § 1503(a), a U.S. national who has been denied a right or privilege on the basis that the individual is not a U.S. national can file a declaratory judgment action for a citizenship determination. *See* 8 U.S.C. § 1503(a); 28 U.S.C. § 2201; *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012). In a § 1503(a) action, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the plaintiff is a U.S. citizen. *See Escalante v. Clinton*, 386 F. App'x 493, 496 (5th

Cir. 2010). The Court reviews the denial of the alleged right or privilege *de novo*. *See Reyes v. Neelly*, 264 F.2d 673, 674 (5th Cir. 1959).

There are only two sources of citizenship: birth and naturalization. *Miller v. Albright*, 523 U.S. 420, 423 (1998). The Fourteenth Amendment guarantees that "every person 'born in the United States, and subject to the jurisdiction thereof,'" is a U.S. citizen. *Thomas v. Lynch*, 796 F.3d 535, 538 (5th Cir. 2015) (quoting *Miller*, 523 U.S. at 423–24). Citizenship not vested at birth can be acquired "only as provided by Acts of Congress." *Garcia*, 915 F. Supp. at 834. The Court may not grant citizenship out of equity or in the interests of justice. *Id.*

## II. FINDINGS OF FACT

### A. Plaintiff's Background

On July 2, 1967, Margarita Perez gave birth to Plaintiff Maria De La Cruz Vargas. Plaintiff's father, Cruz Filemon Vargas, was not present at Plaintiff's birth. Although Plaintiff's mother testified Emma Lopez, a midwife, delivered Plaintiff at 3219 San Dario Avenue, Laredo, Texas, the Court does not find this testimony credible. At trial, Plaintiff's mother had a hesitant demeanor, was selectively non-responsive to questions on cross-examination, and offered inconsistent testimony. Additionally, the Court takes judicial notice that on February 25, 1980, this Court sentenced Emma Lopez for conspiracy and attempt to falsify birth records. *See United States v. Lopez*, 704 F.2d 1382, 1384 (5th Cir. 1983), *cert. denied*, 464 U.S. 935 (1983). Emma Lopez's conviction and sentence were based on her fraudulent procurement of a delayed birth certificate from the Texas Bureau of Vital Statistics. *Id.* at 1383.

Further, at sentencing, the District Judge noted Emma Lopez "had been under investigation for at least ten years for manipulating birth certificates and she had previously received a misdemeanor conviction for a similar offense." *Id.*[1]

On August 14, 1968—approximately 13 months after Plaintiff was born—the Government of Mexico issued an *Acta de Nacimiento*, a Mexican birth certificate, registering the birth of Maricruz Vargas Perez (Def.'s Ex. 1). The Mexican birth certificate states Maricruz Vargas Perez was born in Nuevo Laredo, Tamaulipas, Mexico, on July 2, 1967 to Margarita Perez and Cruz Filemon Vargas (*id.*). The Mexican birth certificate correctly lists the names of Plaintiff's paternal and maternal grandparents: Daniel Vargas, Maria Dolores Silvestre, Margarito Perez, and Marcelina Juarez (*compare* Dkt. No. 44 at 154–155; Dkt. No. 45 at 43–44, 47, 51, 91–92, *with* Def.'s Ex. 1). Having compared the 1968 signature of Margarita Perez on the Mexican birth certificate against other signatures from 2007, 2017, and 2018, the Court concludes the signatures have maintained a consistent appearance over 50 years and the Mexican birth certificate bears the signature of Plaintiff's mother (*compare* Def.'s Ex. 1, *with* Def.'s Exs. 4, 6, 8). *See Sanchez v. Kerry*, No. 4:11-cv-2084, 2014 WL 2932275, at *5 (S.D. Tex. June 27, 2014) ("The fact-finder can make its own handwriting analysis and find that a signature on a document is genuine.") (citations omitted), *aff'd* 648 F. App'x 386 (2015). This conclusion is further underscored by the fact that the Mexican birth certificate correctly lists the names of Plaintiff's four grandparents.

---

[1] The Court notes that at the time of trial, Emma Lopez had passed away, and thus, she did not testify.

3

On October 7, 1973—approximately 6 years after Plaintiff was born—the Holy Redeemer Church in Laredo, Texas, issued a baptismal certificate, which states Plaintiff was born in Laredo, Texas, on July 2, 1967 (Pl.'s Ex. 1).

On November 26, 1974—approximately 7 years after Plaintiff was born—the Texas Bureau of Vital Statistics issued a delayed Texas birth certificate registered in Plaintiff's name, Maria De La Cruz Vargas (Pl.'s Ex. 2). The delayed Texas birth certificate states Plaintiff was born in Laredo, Webb County, Texas on July 2, 1967 to Margarita Perez and Cruz Filemon Vargas (*id.*).

On September 22, 1975—approximately 8 years after Plaintiff was born—Plaintiff's parents were married.

### B. Plaintiff's Passport Applications

On March 30, 2009, when Plaintiff was 41 years old, she applied for a U.S. passport. The U.S. Department of State granted Plaintiff's application and issued Plaintiff a passport on May 27, 2009. However, Plaintiff alleges she never received the document, and she reapplied for a passport on May 13, 2010. Then, on June 11, 2010, the Department of State issued Plaintiff a U.S. passport card.

On July 6, 2012, Plaintiff's purse was stolen, and Plaintiff lost her passport and her children's. Plaintiff then applied for replacement documents. However, on January 16, 2014, the U.S. Department of State rejected Plaintiff's application. The Department of State based its denial on the Mexican birth certificate bearing her parents' and grandparents' names.

On February 15, 2015, when Plaintiff was 47 years old, Plaintiff applied once more for a U.S. passport. On October 27, 2015, the Department of State denied this application. Subsequently, Plaintiff asked the Mexican Consulate in the United States to furnish her birth record, if any, in possession of the Government of Mexico. On March 24, 2017, the Mexican Consulate reported it had no record of Plaintiff's birth—insofar as she was known as Maria De La Cruz Vargas, as opposed to Maricruz Vargas Perez (Pl.'s Ex. 9).

### C. The Department of State's 2017 Investigation

On March 16, 2017, Special Agent Jason Dior Thomson of the U.S. Department of State commenced a criminal investigation concerning passport fraud.[2] In June of that year, Agent Thomson contacted Plaintiff to arrange a meeting. On June 22, 2017, Agent Thomson visited the home of Plaintiff's mother in Laredo, Texas, twice in the same day.

Agent Thomson's first visit occurred at approximately 10:00 a.m. During this visit, Special Agent Paul Bennett Schmitv accompanied Agent Thomson to question Plaintiff and her mother. Plaintiff and her mother advised that Plaintiff was born in Laredo, Texas, and the Mexican birth certificate was forged. Plaintiff and her mother then stated they wished to confer with their family members and asked if Agent Thomson and his colleagues could return later. Agent Thomson and Agent Schmitv acquiesced and left. The entire interaction lasted between 30 to 45 minutes.

---

[2] In the trial transcript, the Court Reporter, at times, spells Agent Thomson's name as "Thompson" (*see, e.g.*, Dkt. No. 46 at 43). In his investigation report and at trial, Agent Thomson spelled his name without a P (Dkt. No. 44 at 20; Def.'s Ex. 13).

5

Later that day, Agent Thomson received a phone call. During the call, Agent Thomson learned Plaintiff and her mother were ready to speak with him again, and Agent Thomson returned for a second visit. Because Agent Schmitv was unavailable, Agent Brent Elrod accompanied Agent Thomson.

During the second visit, Plaintiff's mother orally admitted Plaintiff was born in Nuevo Laredo, Mexico, Plaintiff's birth was registered in Mexico, and the signature on the Mexican birth certificate was hers. Plaintiff's mother also stated Emma Lopez—the midwife—registered Plaintiff's birth in Texas so Plaintiff could attend school in the United States. Plaintiff's mother then provided a signed, sworn written statement contradicting the oral statements just provided to Agent Thomson. To prepare this statement, Plaintiff's mother provided an oral dictation, which Plaintiff transcribed (Def.'s Ex. 6). The written statement avers Plaintiff's mother was forced to register Plaintiff's birth in Mexico due to threats from her father-in-law (*id.*). The written statement does not mention that Plaintiff's birth was registered in the United States for schooling purposes (*id.*).

Plaintiff also provided a signed, sworn written statement (Def.'s Ex. 5). In her written statement, Plaintiff stated June 22, 2017—the day of Agent Thomson's visit—was the first day she learned she was born in Nuevo Laredo, Mexico (*id.*).

Overall, this second visit lasted approximately 30 minutes. Because Officer Thomson discerned no fraudulent intent on Plaintiff's behalf, he did not recommend criminal charges be filed against Plaintiff, and his supervisors agreed (Def.'s Ex. 13).

6

At trial, Agent Thomson testified that he neither promised nor threatened Plaintiff and her mother with anything regarding the statements. He also testified the interactions were overall cordial. Plaintiff and her mother, however, testified that he and his colleagues threatened to file criminal charges against them if they did not admit Plaintiff was born in Mexico. Plaintiff and her mother also testified that Agent Thomson and his colleagues promised that if they admitted Plaintiff was born in Mexico, Agent Thomson would ensure Plaintiff's U.S. passport would be released to her. However, Agent Thomson's division in the Department of State does not render decisions regarding citizenship and passport issuance. The Court finds Agent Thomson's testimony credible, as he offered a consistent narrative, he was not evasive when answering questions, and he had no discernible motive to lie.[3] If anything, Agent Thomson's testimony indicates he was attempting to assist Plaintiff within the confines of the law. The Court therefore concludes Agent Thomson did not make any threats or offer any promises to Plaintiff and her mother during his visits. The Court further concludes that the interaction was cordial.

### D. Additional Credibility Findings

On May 11, 2018, approximately one year after her interaction with Agent Thomson, Plaintiff executed an affidavit, wherein she alleges she offered statements adverse to her due to a promise from Agent Thomson (Def.'s Ex. 3). Specifically, Plaintiff's affidavit claims that Agent Thomson promised to release her passport to her if she signed a declaration admitting her birth in Mexico (*id.*). The affidavit

---

[3] The Government did not call Agent Schmitv or Agent Elrod to testify at trial.

7

further claims Plaintiff was threatened with criminal charges if she did not admit she was born in Mexico (*id.*).

Also on May 11, 2018, Plaintiff's mother executed an affidavit, which reiterates that she signed the written statement due to threats and promises from Agent Thomson (Def.'s Ex. 4). The Court concludes these two affidavits are false, wholly self-serving, and therefore not credible. Accordingly, the Court affords these affidavits no evidentiary weight.

At trial, Plaintiff's mother testified she has never used "Maricruz" as a nickname for Maria de la Cruz (Dkt. No. 44 at 142–45; Def.'s Ex. 1).[4] The Court does not find this testimony credible, particularly because (1) at trial, Plaintiff's mother selectively chose what text she could read during cross-examination;[5] (2) Plaintiff's mother referred to Plaintiff as "Maricruz" in a previous deposition; (3) in her application for a U.S. passport, Plaintiff's mother lists "Maricruz" as her emergency contact (Def.'s Ex. 8); and (4) in her deposition, Plaintiff admitted other individuals have referred to Plaintiff as "Maricruz."

---

[4] The Mexican birth certificate registers the name "Maricruz" (Def.'s Ex. 1). In the trial transcript, the Court Reporter spells this name as "Mari Cruz" and "Mary Cruz" (*see, e.g.*, Dkt. No. 44 at 143; Dkt. No. 45 at 99). In these Findings of Fact, the Court adopts the spelling "Maricruz" for consistency.

[5] For example, when asked to read "Maricruz" or spell the name on a letter-by-letter basis from a document, Plaintiff's mother testified she could not do so due to vision impairments (Dkt. No. 44 at 147–49). The Court then questioned the veracity of this statement, noting that Plaintiff's mother was able to read other exhibits without any issues, but, curiously, when confronted with an exhibit adverse to her and her daughter, Plaintiff's mother had difficulty reading (*id.* at 149–50). After the Court expressed its concerns, Plaintiff's mother could suddenly read "Maricruz" without problems (*id.* at 150). Similarly, when asked to read two adverse sentences from a document, Plaintiff's mother did not obey with this basic instruction (Dkt. No. 46 at 33–41). Only when the Court noted Plaintiff's mother appeared "unwilling" did Plaintiff's mother comply (*id.* at 40–41).

At trial, Plaintiff's mother testified the signature next to her name on Plaintiff's Mexican birth certificate was not hers. Based on the Court's review of various signatures admitted into evidence and the demeanor of Plaintiff's mother on the stand, the Court does not find this testimony credible.

At trial, Plaintiff's mother testified she registered Plaintiff's birth in Mexico due to threats from her father-in-law, Daniel Vargas. According to Plaintiff's mother, when Plaintiff was thirteen months old, she resembled Daniel Vargas' mother, and this resemblance motivated Daniel Vargas to try to steal Plaintiff from her mother. However, Plaintiff's mother never explained how registering Plaintiff's birth in Mexico would either assist or prevent Daniel Vargas from stealing her. The Court finds this testimony outlandish, false, and affords it no evidentiary weight.

### III. CONCLUSIONS OF LAW

A U.S. birth record filed by a government authority in official records and issued contemporaneously with the plaintiff's birth is generally considered "almost conclusive evidence of birth" in the United States. *See Treviño v. Pompeo*, No. 5:16-cv-139, Dkt. 70 at 13 (S.D. Tex. Sept. 13, 2019). Likewise, a foreign birth certificate filed in official records contemporaneously to the birth is "almost conclusive evidence of birth" in that country. *Garcia*, 915 F. Supp. 2d at 834. Therefore, the existence of a contemporaneously filed foreign birth certificate "creates a presumption of alienage." *Cobos v. Kerry*, No. H-13-2897, 2015 WL 3965660, at *6 (S.D. Tex. June 30, 2015). Further, delayed Texas birth certificates are entitled to less evidentiary weight compared to more contemporaneously issued birth certificates. *See Sanchez*, 2014 WL

9

2932275, at *1, *4 (giving more evidentiary weight to 1987 Mexican birth certificate than to 1988 delayed Texas birth certificate); *Pena-Sanchez v. Clinton*, No. 7:11-cv-125, Dkt. No. 35 at 4 (S.D. Tex. Apr. 13, 2015) (giving more evidentiary weight to 1971 Mexican birth certificate than to 1974 delayed Texas birth certificate).

Although the August 1968 Mexican birth certificate was not contemporaneously filed with Plaintiff's July 1967 birth, the document is nevertheless entitled to more evidentiary weight than her 1974 delayed Texas birth certificate. *See id.* Because (1) the 1968 Mexican birth certificate carries more evidentiary weight, (2) the Mexican birth certificate bears the signature of Plaintiff's mother, (3) Plaintiff's mother voluntarily admitted to Agent Thomson that Plaintiff was born in Mexico during his second visit, (4) individuals, including Plaintiff's mother, have referred to Plaintiff as Maricruz, (5) Emma Lopez was previously convicted for falsifying birth records, and (6) Plaintiff has offered no compelling evidence of her birth in the United States, the Court concludes Plaintiff has failed to prove by a preponderance of the evidence that she was born in the United States. The Court notes that any of the aforementioned reasons, standing alone, would have led the Court to this conclusion. The Court further notes that, even if a burden-shifting scheme applied, the Government met its burden to establish Plaintiff was born in Mexico, as this case was "not a close call." *Candela-Rios v. Sessions*, 737 F. App'x 187, 190–92 (5th Cir. 2018).[6] Accordingly, Plaintiff is not entitled to declaratory judgment that she is a U.S. citizen.

---

[6] In the Ninth Circuit, "the Government bears the initial burden to prove alienage and then bears it again if the alleged alien presents evidence of birth in the United States." *Candela-Rios*, 737 F. App'x

It is so **ORDERED**.

**SIGNED** November 2, 2021.

                                                  Marina Garcia Marmolejo
                                                  United States District Judge

---

at 190 n.3 (citing *Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015) (en banc)). The panel in *Candela-Rios* declined to decide whether the Ninth Circuit's burden-shifting scheme also applied in the Fifth Circuit. *Id.* at 190. Nevertheless, assuming such a scheme applied, the Fifth Circuit affirmed the district court's conclusion that the plaintiff was not a U.S. citizen. *Id.* at 192.